STATE, Respondent, v. ALDAHL et al., Appellants.

(No. 7,764.)

(Submitted March 14, 1938.   Decided March 24, 1938.)

[78 Pac. (2d) 935.]

*Mr. C. A. Spaulding* and *Mr. E. V. Ahern,* for Appellants, submitted a brief, and argued the cause orally.

*Mr. Harrison J. Freebourn,* Attorney General, *Mr. Lee Metcalf,* Assistant Attorney General, and *Mr. Oscar C. Hauge,* County Attorney of Hill County, for Respondent, submitted a brief; *Mr. Metcalf* and *Mr. Hauge* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Defendants were charged with the crime of gambling. They waived jury trial. The cause was tried to the court on an agreed statement of facts. Defendants were found guilty and sentenced to pay a fine of $200 each. Their motion for new trial was denied, and they have appealed from the judgment of conviction and from the order denying the motion for a new trial.

The appeal presents the single question whether the agreed facts constitute a public offense. Those facts were these: Defendants did, at the county of Hill, on or about the 14th day of August, 1937, deal, play, carry on, open, conduct, operate, and run, and cause to be dealt, played, carried on, opened, conducted, operated, and run, a game of chance played with cards commonly known as blackjack.

On August 14, 1937, defendant Ober was the owner and proprietor of and conducted a cigar store and beer parlor in Havre, known as the ''Oxford,'' where he carried a stock of merchandise. He had secured a license from Hill county for the operating of the table in his place of business at which the game of blackjack was conducted, operated and played; he also had a license from the city of Havre. He had paid the county license fee of $10 per annum, and the city license fee of $30 per month. On August 14, 1937, defendant Aldahl was employed by defendant Ober as a dealer and player at the blackjack table. In playing the game of blackjack the players and Aldahl used trade checks which were redeemable in any of the merchandise in the stock of trade of the business of defendant Ober at the going retail price of the merchandise, and which were redeemable by defendant Ober or his employees in the place of business in cash at the option of the holder, and which trade checks were sold by the defendants to the players. Defendant Aldahl on August 14, 1937, started the game as dealer, and whenever any of the other players turned a blackjack the deal passed to such player; thereupon Aldahl, for defendant Ober, put in 50 per cent. of the trade checks necessary to bank the game, the other

50 per cent. being put in by the player holding the deal. The player turning the blackjack and getting the deal either dealt the cards himself or let some one of the other players, including Aldahl, deal for him. The game of blackjack was played in the usual and customary manner in which blackjack is played. The trade checks used in the game were five-dollar, one-dollar, twenty-five-cent and five-cent checks.

The question before us is whether these facts constitute a crime within the meaning of Chapter 153, Laws 1937. Section 1 of that Chapter makes it a misdemeanor for any person to deal, operate, conduct, carry on, open, or run certain named games, "or any game of chance played with cards" for "money, checks, credit, or any representative of value, or any property or thing whatsoever." It also provides that "any person owning or in charge of any cigar store, drug store, or other place of business, or any place where drinks are sold or served, who permits any of the games prohibited in this section to be played, in or about such cigar store, drug store, or other place of business, * * * and every person who plays or bets at or against said prohibited games or devices, except as hereinafter provided, is guilty of a misdemeanor." It then contains this proviso: "provided, however, that it shall be lawful for cigar stores, fraternal organizations, charitable organizations, drug stores and other places of business, upon the payment of a license fee therefor to the county treasurer in the sum of ten dollars ($10.00) annually per table used or operated in such place of business, to maintain and keep for the use and pleasure of their customers and patrons, card tables and cards with which and at which such games as rummy, whist, bridge whist, blackjack, euchre, pinochle, pangene or pangeni, seven-up, hearts, freeze-out, casino, solo, cribbage, five hundred, pennie ante, dominos, high-five and checkers may be played for pastime and amusement by customers who are not minors, and for the maintenance of which a charge may be made, to be paid by the users by the purchase of trade checks which must be redeemable in merchandise at the going retail price of such merchandise, which is the stock in trade of such business; and that places of business may, upon

the payment of a license fee therefor to the county treasurer in the sum of ten dollars ($10.00) annually, exhibit for use and sale to all customers not minors, trade stimulators, such as pull boards and ticket boards, where each board so used returns to the owner or business not to exceed the going retail price of the goods disposed of and sold and disposed of through the use of the same, and which goods sold and disposed of through the use of the same must not be other than the goods constituting the usual stock in trade of the business using the same.''

Section 2 of the Act provides for the issuance of a license by the county treasurer, which shall expire each year at midnight on December 31 of the calendar year for which issued, and provides that the license fees shall be deposited in the poor fund of the county.

Section 3 provides: ''That any religious, fraternal or charitable organization, and all private homes, are not included within the provisions of this Act.''

Defendants contend that the agreed facts bring the case within the proviso of section 1 above quoted, and that the operations complained of are legal.

Criminal statutes are to be construed according to the fair ▇ import of their terms, with a view to effect their object and to promote justice. (Sec. 10710, Rev. Codes.)

We are unable to find anything in Chapter 153 from which ▇ it can be said that it is legal to conduct or run a game of blackjack for checks, credits, or other representative of value in a place of business such as is involved here. The first part of that Chapter expressly prohibits it. The proviso, section 1, contains no language authorizing it. The proviso simply states that it shall be lawful for places of business to maintain and keep for the use and pleasure of their customers and patrons, card tables and cards upon the payment of annual license fees. It makes it lawful for blackjack to ''be played for pastime and amusement by customers who are not minors.'' It then contains this clause: ''And for the maintenance of which [meaning the card tables and cards] a charge may be made, to be paid by the users by the purchase of trade checks which must be re-

deemable in merchandise at the going retail price of such merchandise, which is the stock in trade of such business." This language does not suggest that the trade checks might be used in playing the game. They, in effect, constitute the rental value of the use of the table and cards at which the game is played. In that manner and to some extent they constitute a trade stimulator. But in the face of the positive prohibition in the first part of section 1 against the use of checks, credits, or other representative of value, it cannot be said that the use of these checks in betting on the games was authorized directly or indirectly by the language of the proviso contained in that section. The title of Chapter 153 also indicates clearly that it was designed merely to permit the playing of the enumerated games "for amusement and pastime."

We have not failed to give effect to that part of section 1 of the Act wherein it is provided that "every person who plays or bets at or against said prohibited games or devices, except as hereinafter provided, is guilty of a misdemeanor." This language implies that the legislature intended thereafter in the Act to make provision authorizing bets, but we find nothing in the Act, except section 3 thereof, that can be said to relate back to the phrase "except as hereinafter provided" and which can be said to authorize betting at any of the games enumerated. Defendants do not contend that they come within the provisions of section 3 of the Act.

Since the use of trade checks in the manner shown here is expressly prohibited by the Act, the judgment of the trial court was correct.

The judgment and order are accordingly affirmed.

Mr. Chief Justice Sands and Associate Justices Stewart, Anderson and Morris concur.

Rehearing denied May 4, 1938.