STATE, APPELLANT, v. ISRAEL ET AL., RESPONDENTS

No. 8957

Submitted May 2, 1950. Decided July 6, 1950.

220 Pac. (2d) 1003

Mr. Arnold H. Olsen, Atty Gen., Mr. Willis B. Jones, Mr. Philip O'Donnell, Asst. Attys. Gen., Mr. Melvin E. Magnuson, County Atty., Mr. John C. Harrison, Mr. Michael G. Chilton, Deputy County Attys., all of Helena, for appellant. Mr. Magnuson, Mr. Harrison and Mr. Chilton argued orally.

Edwin K. Cheadle, Helena, for respondents. Mr. Cheadle argued orally.

PER CURIAM.

This is an appeal by the state from a judgment of the district court of Lewis and Clark county, Hon. George W. Padbury, Jr., district judge presiding, given and entered for de-

154

fendants on demurrer sustained to an amended information filed by Melvin E. Magnuson, Esq., county attorney of said county, charging the defendants Milton Israel and The Diversion Club, a so-called "nonprofit" corporation, with the crime of unlawfully "keeping and maintaining" five coin-operated slot machines.

This case is an afterclap of State ex rel. Olsen v. Horsky, 122 Mont. 547, 206 Pac. (2d) 1157, wherein Milton Israel, The Diversion Club and their counsel boldly assumed the offensive by firing upon the forces of the attorney general of this state before they had taken their battle stations in the declared emergency created throughout the state by the notoriously flagrant violation of our criminal laws banning gambling, including the running, conducting and keeping of slot machines.

On January 5, 1949, in his official message to the members of the Thirty-first Legislative Assembly (1949), delivered at the opening of the session, the Governor of the state of Montana, in part said:

"Since you last assembled here, Social Clubs have grown over this State like mushrooms. There has not been a case insofar as I can determine, which has determined whether or not any of these Social Clubs have conformed to existing laws. These Clubs, in many instances, have received licenses from the State to operate slot machines. Many of these clubs carry on open gambling. At the same time, as most everyone knows, without the guise of social clubs, slot machines are being illegally operated openly and notoriously, in violation of law in many counties of this state. In many instances, I am informed, individuals or syndicates control the operation of these slot machines. This practice is, of course, a racket, constitutes corruption and should not be tolerated. Only the illegal operators and corrupt public officials profit under this system. * * *

"*These are matters for you and for you alone to rectify during this Session and I so recommend.*" Emphasis supplied.

The 1949 state legislative assembly considered and debated

pro and con the question of legalizing slot machines but apparently considered the numerous prohibitions against their use, operation and possession a sufficient ban on such gambling devices for no new or further bans were enacted. However, the legislature by the enactment of Chapter 197, of the Session Laws of 1949, pages 467-470, provided for the submission to the voters of the state of a referendum measure on the question of making lawful the operation of slot machines in this state and also passed House Bill No. 450, declaring an emergency and making a special appropriation in the sum of $40,000 to the attorney general for investigating irregularities and violations of the law and for "enforcing the gambling, *slot machine* and other criminal laws of the State of Montana." See Session Laws of 1949, at p. 642.

On May 21, 1949, while the attorney general was engaged with his investigations and *before* any arrests were made or prosecutions started, The Diversion Club, as plaintiff, by its attorneys, Floyd O. Small, Esq. and Edwin K. Cheadle, Esq., commenced suit against the attorney general of the state and the county attorney and sheriff of Lewis and Clark county seeking to tie the hands of such law enforcement officers by restraining them from in any manner interfering with the business of The Diversion Club "including the operation of its * * * slot machines."

On the same day, May 21, 1949, upon the reading of the complaint that day filed in the district court of Lewis and Clark county, that court, Hon. A. J. Horsky presiding on the *ex parte* application of plaintiff's attorneys, made and caused to be served upon the defendant public officers an order to show cause, returnable June 16, 1949, and an injunctive order restraining and prohibiting the attorney general, sheriff and county attorney aforesaid from in any manner interfering with the conduct and operation of the plaintiff, the Diversion Club, "including the operation of its said slot machines * * * and from seizing and confiscating * * * said slot machines, or instituting or causing to be instituted any action against the

plaintiff for the alleged violation of the Laws of the State of Montana because of plaintiff's operation of said slot machines.''

May 23, 1949, this court, on proper application of the enjoined public officers, promptly untied the hands of the attorney general, county attorney and sheriff by issuing and causing to be served its writ suspending forthwith the improper and unauthorized injunctive order of the district court. See State ex rel. Olsen v. Horsky, supra.

Thereafter, on the same day, May 23, 1949, a search warrant was issued by A. J. White, justice of the peace of the justice court of Helena township, authorizing a search of the premises and place of business of The Diversion Club where the officers, sheriff and his deputies, acting under the authority of such search warrant, seized and took into their possession certain gambling paraphernalia, including five slot machines, a ''croupier stick'' and other gambling devices, there found,—arrested the defendant Milton Israel, secretary-treasurer of the Diversion Club,—and delivered the seized machines, devices and paraphernalia into the custody of the justice of the peace issuing the search warrant ''to be used as evidence on the trial of such prisoner.'' R. C. M. 1947, sec. 94-2411, sec. 11167, R. C. M. 1935.

May 31, 1949, on leave granted, the county attorney filed in the district court the original information herein accusing defendants ''of the crime of keeping and maintaining and operating slot machines.''

June 2, 1949, defendants being present in court, in person and by counsel, the county attorney requested that the defendants be arraigned. Thereupon defendants' counsel requested a few days additional time for arraignment. The court granted the request and fixed 10:00 a. m., June 6, 1949, as the time for the arraignment and the defendant Israel was released on his own recognizance until after arraignment.

The record fails to show any arraignment of defendants on June 6, 1949, or at any other time.

June 8, 1949, on motion of the county attorney, the court

granted leave to file an amended information on or before June 13th.

June 13, 1949, the county attorney filed in the district court an amended information charging: "That at the County of Lewis and Clark, in the State of Montana, on or about the 23rd day of May A. D. 1949, and before the filing of this amended information, the said Milton Israel and The Diversion Club, a corporation, did wilwully, unlawfully, wrongfully, knowingly and intentionally carry on, open, conduct, run and cause to be conducted and run for money five slot machines, such slot machines being machines operated by inserting a coin of the United States therein by the player and from the play of which he obtains, or may obtain, by chance, lawful money of the United States, and did then and there keep said slot machines and permit the same to be run and conducted for lawful money of the United States, said defendant, The Diversion Club, being then and there and at all times since the 28th day of April 1949 a corporation organized and existing under and by virtue of the laws of the State of Montana, all of which was done and caused to be done by the defendant, contrary to the form, force and effect of the statute in such case made and provided and against the peace and dignity of the State of Montana."

June 14, 1949, the defendants by their counsel, Floyd O. Small, Esq., filed in the aforesaid criminal action so pending in the district court an affidavit reading:

"Affidavit and Application for Return of Property

"State of Montana        ⎫
                         ⎬ss.
County of Lewis and Clark ⎭

"Milton D. Israel, being first duly sworn according to law, deposes and says: That he is one of the defendants above named, and that he is an officer, to-wit: Secretary-Treasurer, of the above named defendant, The Diversion Club, which is a Montana Corporation, duly organized, and existing under the laws of Montana; That said defendant, The Diversion Club, is a nonprofit social, fraternal and charitable organization, duly li-

censed and authorized to act and operate as such, pursuant to the laws of Montana; That said defendant, The Diversion Club, is, and at all times herein mentioned has been, the lawful owner of certain personal property, including among other things the following: Five certain slot machines, described as: $1.00 machine 513443–Board of Equalization Lic. No. 3082; 10¢ machine 545114–Board of Equalization Lic. 3079; 25¢ machine 563118–Board of Equalization Lic. 3080; 50¢ machine 542221–Board of Equalization Lic. 3081; 5¢ machine 541333–Board of Equalization Lic. 3078; One Frame Bing Table with green cloth, One Jack Pot Wheel or Drum, and two yellow cards; One croupier stick, and one cash money changer containing cash in the amount of more than $64.05;

"That all of said aforementioned property was owned, and possessed by said defendant, The Diversion Club, at its club room, near the City of Helena, in the County of Lewis and Clark, on, or about May 23, 1949, at which time E. R. Munger, Sheriff of said Lewis and Clark County, and Arnold H. Olsen, Attorney General of the State of Montana, purporting to be acting under and by virtue of a certain alleged search warrant, issued by the Justice Court of Helena Township, A. J. White, Justice of the Peace, did forcibly, wrongfully and unlawfully take, seize, and carry away the above described slot machines, and other property above mentioned, as well as other items of personal property; That subsequently the above described slot machines, and other property were delivered by the above named Justice of Peace, and Justice Court, over to the Clerk of the above entitled District Court, allegedly in connection with the prosecution of the above entitled action, against these defendants; and that ever since, said slot machines, and other property above described has been, and now is, in the possession and custody of the Clerk of the above entitled Court;

"That at the time said above described slot machines were seized and taken from defendants, as aforesaid, each and all of

said slot machines were duly, and regularly, licensed by the State of Montana, and said defendants were duly and regularly licensed by the State of Montana, to operate, own and maintain said slot machines, in the aforementioned club room of defendants, from which the same were seized, and taken;

"That the aforementioned search warrant, or purported search warrant, under which said E. R. Munger and Arnold H. Olsen pretended to act, in seizing said slot machines and other property, was and is void upon its face, in that there was not, and is not, any showing whatsoever, either in said search warrant, or in the Complaint therefor, of any probable cause, or any legal cause, or justification whatever for the seizure or confiscation of said slot machines; but that on the contrary it appears upon of the face of said search warrant, and the complaint therefor, that said slot machines were legally, properly and rightfully owned, maintained and operated by defendants, in their said club room; and that all the other property above described, as well as other property taken and seized and carried away by said Munger and Olsen, was seized and taken by them without any pretense of right, or authority, whatsoever, that none of said property was in any manner mentioned in said purported search warrant or in the complaint therefor;

"That said above described slot machines, and other property, were wrongfully and unlawfully taken, and seized, without any showing of any lawful, or probable cause therefor; and that defendants are lawfully entitled to return of said machines and property, and all thereof, forthwith; That there has never been any valid charge filed against these defendants, or either of them, which would, or will, justify the taking or holding of said slot machines and other property above described;

"That affiant accordingly makes this affidavit, on behalf of said defendants, to be considered by the above entitled Court as a formal application for the return to said defendants, of the above described slot machines, and other personal property, and

all thereof; and that appropriate order be duly made by the Court for the immediate return of the same to defendants, as the rightful owners, and entitled to possession, thereof.

"/s/ Milton D. Israel.

"Subscribed and sworn to before me this 14th day of June, 1949.

"/s/ Floyd O. Small, Notary Public for the State of Montana, Residing at Helena, Montana. My commission expires Jan. 6, 1949"

" (Seal)

The record fails to show any service of the foregoing affidavit and application upon the county attorney or any notice whatever to him of the filing thereof.

Without notice to the county attorney and upon defendants' *ex parte* application therefor, the court, Hon. George W. Padbury, Jr., presiding, on June 14, 1949, upon the reading of the affidavit and application, made its *ex parte* order for the return forthwith to the accused defendants of the five slot machines and all other property seized as follows:

"Order

"Whereas, there is now being held by the Clerk of this Court, certain personal property consisting of five (5) slot machines, more particularly described as: $1.00 machine 513443–Board of Equalization No. 3082; 10¢ machine 545114–Board of Equalization No. 3079; 25¢ machine 563118–Board of Equalization No. 3080 Back of Base knocked off; 50¢ machine 542221–Board of Equalization No. 3081; 5¢ machine 541333–Board of Equalization No. 3078 and also certain other property consisting of 1 Frame Bing Table with green cloth and 1 Jack Pot Wheel or Drum and two yellow cards; one Croupier stick, and one cash changer containing $64.05 in cash,

"Which said property was, and is, property belonging to the above named defendants, the Diversion Club, and Milton Israel, and which was seized and taken away from said defendants,

under and pursuant to a purported search warrant, issued out of the Justice Court of Helena Township, and subsequently by said Justice Court, and Justice of the Peace, transferred and turned over to the custody of the Clerk of this Court in connection with the above entitled cause filed herein; and

"Whereas, it now appears to the satisfaction of this Court that a portion of said property was not in any manner, described, or mentioned, in said purported search warrant, and further, that it does not appear that there was shown the requisite, or any, probable cause, sufficient to justify the seizure of said property, or any thereof; and that by reason of the premises said above named defendants were, and are, entitled to have said property forthwith returned to them;

"Now, Therefore, upon application of said defendants, and the Court being fully advised in the premises, it is hereby ordered, and this does order, that said above mentioned five (5) slot machines, and all other property herein mentioned, be forthwith returned to the above named defendants; and the Clerk of this Court is hereby, accordingly, authorized and directed to return said property to said defendants.

"Dated this 14th day of June, 1949.

"/s/   George W. Padbury, Jr.
"District Judge.

"Received the above enumerated articles of property this 14th day of June 1949.

"/s/   Floyd O. Small
"Attorney for Defendants."

Public knowledge that slot machines are gambling devices is ▇ so universal that it is a waste of time and space to cite authorities to that effect. State v. Las Cruces Elks Club of Benevolent & Protective Order of Elks, 1950, 54 N. M. 137, 215 Pac. (2d) 821, 822. Our law prohibits *all* persons from running, conducting or keeping any slot machine, R. C. M. 1947, sec. 94-2401, sec. 11159, R. C. M. 1935, and denounces such machines as a public nuisance. R. C. M. 1947, sec. 94-2409, sec.

11165, R. C. M. 1935; State ex rel. Replogle v. Joyland Club, 124 Mont. 122, 1950, 220 Pac. (2d) 988.

While a *"croupier stick,"* like a shepherd's staff, is hooked at one end, it is not nearly so large nor strong and it serves an entirely different purpose. A "croupier" is: "a. A gamester's assistant; b. One who presides at a gaming table and collects and, usually, pays the stakes." Webster's New International Dictionary, 2d ed. A *"croupier stick"* is the stick with a curved or hooked end used by the *"croupier"* in raking in the dice, chips and money on the gaming table at the end of the play.

The "bing" table with its green cloth,—the "jack pot" ▇ wheel or drum with its yellow cards and the coin changer with its $64.05 in cash are all component parts of gambling devices; contraband and subject to seizure and forfeiture. Compare: Dorrell v. Clark, 90 Mont. 585, 4 Pac. (2d) 712, 79 A. L. R. 1000; State ex rel Replogle v. Joyland Club, supra; State v. Johnson, 52 N. M. 229, 195 Pac. (2d) 1017; State v. Las Cruces Elks Club of Benevolent & Protective Order of Elks, supra. All should have been held "to be used as evidence on the trial" and until "after the disposition of the case" at which time it "shall be the duty of the trial court * * * to cause the immediate and public destruction" of all such articles, R. C. M. 1947, sec. 94-2411, sec. 11167, R. C. M. 1935, except the money which "shall be deposited with the county treasurer" to be credited to the proper fund, R. C. M. 1947, sec. 94-2412, sec. 11167.1, R. C. M. 1935, and the coin changer, being capable of lawful possession and use, should be ordered sold and the money received therefor deposited with the county treasurer as aforesaid.

Here in a criminal case on the day following the filing of the amended information,—*before* the arraignment of defendants, —*before* demurrer or plea,—*before* the disposition of the case, —with no notice whatever to the state, the district court ordered the state's evidence handed back to the accused per-

sons from whom the sheriff and attorney general, in the performance of their duty as law enforcement officers, had taken the outlawed gambling devices and other contraband articles.

In so doing the district court not only failed to follow the ■ law but it disobeyed its plain mandate and its order for the handing over of the state's evidence before the "disposition of the case" as the law requires, R. C. M. 1947, sec. 94-2411, is void *ab initio* and contrary to express statute and the long established public policy of this state.

June 15, 1949, defendants' counsel served and filed notice of ■ motion for a bill of particulars. The district court granted the motion and ordered the county attorney to prepare and deliver to defendants' counsel the bill so demanded and ordered. The motion should have been denied. For statement of full particulars concerning their operations and gambling paraphernalia defendants need but consult the above quoted affidavit of the defendant Milton Israel. The incriminating admissions in this affidavit made out a *prima facie* case for the state.

June 24, 1949, defendants interposed a demurrer to the amended information on the grounds: (1) "That the facts stated therein do not constitute a public offense." (2) "That it contains matter, which if true, would constitute a legal justification or excuse for the offense charged, or other legal bar to the prosecution."

June 28, 1949, Judge Padbury filed an order sustaining the above demurrer wherein he found: That neither defendant is guilty of any violation of any law or statute to which the attention of the court has been directed; that The Diversion Club was and is "an organization such as is contemplated by section 3 of Chapter 153, Laws of Montana 1937, as amended, and is therefore, as such, within the category of organizations deemed to be excepted from application 'of laws prohibiting use or operation of slot machines or other gambling devices;'" that the facts stated do not constitute a public offense "and

that the facts * * * set forth are such as to constitute a legal justification or excuse for any offense that might be charged against these defendants or either of them.''

The amended information filed June 13, 1949, clearly and sufficiently charges the defendants with the commission of the offense and crime banned by the provisions of R. C. M. 1947, section 94-2401. The demurrer is wholly without merit as to each of its grounds. The order of the district court sustaining defendants' demurrer is erroneous and must be set aside and vacated.

July 16, 1949, defendants' attorneys, Floyd O. Small and E. K. Cheadle, made written acknowledgment of service of the state's bill of exceptions that day served upon them by county attorney Magnuson.

On this appeal the state assigns as error: The return of the seized property to defendants upon their *ex parte* application; the sustaining of the demurrer to the amended information; and the rendering and entering of judgment for defendants.

Slot machines have long been banned by various enactments of the Montana state legislature.

The provisions of section 11160 of the Revised Codes of Montana of 1935 bans the *possession* of slot machines by any and *all* persons except *only* ''a public officer, or * * * a person coming into possession thereof in or by reason of the performance of an official duty and holding the same to be disposed of according to law.''

In this case the quoted exception made lawful the possession of the seized gambling paraphernalia including the five slot machines: (1) By the public officers who seized the banned articles and arrested the defendants; (2) by the justice of the peace issuing the search warrant into whose custody the sheriff delivered the property seized upon making his return on the search warrant; and (3) by the clerk of the district court when, after information filed, the slot machines and other gambling paraphernalia were by the justice of the peace de-

livered to such clerk to hold as evidence against the defendants herein. On the other hand, the possession by defendants of the banned contraband slot machines and gambling paraphernalia was wholly prohibited and unlawful under the provisions of section 11160, Revised Codes of Montana, 1935, both *before* the seizure and arrest and *after* the return of the property to defendants by the order of the district court of June 14, 1949.

The provisions of section 11160 were originally enacted as section 2 of Chapter 115, of the Session Laws of 1907, and, at all times since its effective date, April 1, 1907, have been and still do constitute the law of Montana, never having been amended in any particular and now being section 94-2404 of the Revised Codes of Montana of 1947.

The provisions of section 11159 of the Revised Codes of Montana of 1935 banned the *running or conducting* of *all* slot machines to *all* persons. The prohibition applied to all alike. None was excepted from this ban.

*"Hickey Law."* In 1937 the state legislative assembly enasted Chapter 153 of the Session Laws of 1937 amending the provisions of section 11159, R. C. M. 1935, so that upon the payment of a *license* fee of $10 annually per table used or operated the ban would be lifted to permit the playing of (1) dominos, (2) checkers and (3) certain enumerated card games "played for pastime and amusement * * * for the maintenance of which a charge may be made, to be paid by the users by the purchase of trade checks" commonly called *"hickeys"* redeemable only in merchandise at the going retail price of such merchandise, which is the stock in trade of the licensed business. This Act, Chapter 153, Laws of 1937, is commonly known as the "Hickey Law."

A *"hick"* is: "An ignorant or uncouth rustic; a rube; jake." Webster's New International Dictionary, 2d Ed. The *"hickey"* is the device, gadget, gimmick, trade check or "trade stimulators, such as pull boards and ticket boards" designed to attract, appeal to and entertain the so-called "hicks from the sticks."

The announced purpose of Chapter 153, Session Laws of 1937, was to amend section 11159, supra, so as to provide for a *license* and upon the payment of the required fee therefor, to lift the ban on operating the "hickey" games enumerated in the "hickey" proviso of the statute. The title to Chapter 153, supra, discloses such legislative intent. The title reads: "An Act to Amend Section 11159 Revised Codes of Montana, 1935, prohibiting Gambling Games, Said Amendment Providing for the Playing of Certain Games for Amusement and Pastime, and the Use in Places of Business Trade Stimulators Upon the Payment of a License to the County Treasurer, and Providing a Penalty for the Violation Thereof."

The "hickey" proviso of Chapter 153, supra, makes it "lawful for cigar stores, fraternal organizations, charitable organizations, drug stores and other places of business, upon the payment of a license fee therefor * * * to maintain and keep for the use and pleasure of their customers and patrons" the designated "hickey" games of dominos, checkers and the card games played with playing cards enumerated in the "Hickey Law."

Slot machines are not included among the enumerated "hickey" games nor among the "trade stimulators" from which the ban was lifted by the provisions of the "Hickey Law."

The "Hickey Law" amends section 11159, R. C. M. 1935, so as to lift the ban on the playing of the enumerated "hickey" games in any religious, fraternal or charitable organizations and in all private homes without requiring such organizations and private homes to pay the "hickey" license fee of $10 annually per table used or operated therein for such privilege, section 3 of the law providing that the named organizations and private homes are not included within the provisions of the "hickey" Act.

There is nothing in the provisions of the "Hickey Law" that makes it lawful for any person or any religious, fraternal

or charitable organization, or any private home to run, conduct or keep any slot machine within the state of Montana.

On the contrary, the "Hickey Law" of 1937, like section 11159, R. C. M. 1935, expressly bans the operation of any and *all* slot machines by any and *all* persons. State ex rel. Replogle v. Joyland Club, supra.

In 1945 the state legislative assembly enacted Chapter 142 of the Session Laws of 1945, R. C. M. 1947, secs. 84-3601 to 84-3610, being another *licensing* statute, section 2 whereof provides: "The provisions of the so-called 'Hickey Law,' Section 11,159, Revised Codes of Montana of 1935 as amended by Chapter 153, Session Laws of Montana of 1937, prohibiting the running, keeping or operating of slot machines, are hereby declared to be in full force and effect."

Thus did the 1945 legislative assembly interpret and declare the "Hickey Law" of 1937 to be a law "prohibiting the running, keeping or operating of slot machines," which the 1945 assembly further expressly "declared to be in full force and effect."

The provisions of section 2 of Chapter 142, Laws of 1945, read in connection with those of section 1 of the Act, prohibit *all* persons, including both natural and artificial persons, and all partnerships, corporations, associations and societies and all persons of every sort and kind from running, conducting or keeping any slot machine or slot machines within the state of Montana. Compare: State ex rel. Replogle v. Joyland Club, supra.

Thus is the keeping of slot machines prohibited by the provisions of sections 94-2401 and 94-2404, R. C. M. 1947, as well as by those of other sections of the Penal Codes of this state not necessary for us to here consider.

The payment of a license or tax upon a business prohibited by statute is no justification for doing the forbidden act. State ex rel. Replogle v. Joyland Club, supra.

In Thompson v. Hall, 104 W. Va. 76, 138 S. E. 579, 580, the

court said: "There is considerable authority holding that the state may levy a license tax on an unlawful business. This is permitted upon the theory that the tax is intended as a penalty in addition to that prescribed by the criminal law, and will therefore tend to discourage the business." Compare: U. S. v. Constantine, 296 U. S. 287, 56 S. Ct. 223, 80 L. Ed. 233; In re Ridenbaugh, 5 Idaho 371, 49 Pac. 12; Benson v. City of Long Beach, 61 Cal. App. (2d) 189, 142 Pac. (2d) 440.

Any article, machine or apparatus maintained or kept in ▇ violation of any of the provisions of R. C. M. 1947, sections 94-2401 and 94-2404 is a public nuisance. R. C. M. 1947, sec. 94-2409.

Section 94-2410, R. C. M. 1947, sec. 11166, R. C. M. 1935, provides: "It shall be the duty of every officer authorized to make arrests, to seize *every machine*, apparatus, or instrument answering to the description contained in this act, or which may be used for the carrying on or conducting of any game or games mentioned in this act, and to arrest the person actually or apparently in possession or control thereof, or of the premises in which the same may be found, if any such person be present at the time of the seizure and to bring the machine, apparatus, or instrument and prisoner, if there be one, before a committing magistrate." Emphasis supplied.

Section 94-2411, R. C. M. 1947, provides: "The magistrate before whom *any machine*, apparatus, or instrument is brought pursuant to the preceding section must, if there be a prisoner and if he shall hold such prisoner, *cause the machine*, apparatus, or instrument *to be delivered to the county attorney to be used as evidence on the trial of such prisoner*. If there be no prisoner, or if the magistrate does not hold the prisoner, he must cause the immediate and public destruction of the machine, apparatus, or instrument in the presence of said magistrate. No person owning or claiming to own any such machine, apparatus, or instrument so destroyed, shall have any right of action against any person or against the state, county, or city for the value of such article, or for damages. *It shall be the duty of the county*

*attorney to produce such articles in court on the trial of the case. It shall be the duty of the trial court, after the disposition of the case, and whether the defendant be convicted, acquitted, or fails to appear for trial, to cause the immediate and public destruction of any such article by the sheriff or any other officer or person designated by the court."* Emphasis supplied.

Section 94-2413, R. C. M. 1947, sec. 11168, R. C. M. 1935, provides: "Every sheriff, constable and public officer having probable cause to believe that any room, tent, or apartment is being used as a room, tent, or apartment for the playing or conducting of any of the games mentioned in this act, *shall have authority to break open any door,* or opening into any such room, tent, or apartment, *with or without a warrant of arrest,* for the purpose of arresting the offenders against this act." Emphasis supplied.

Section 94-2414, R. C. M. 1947, sec. 11169, R. C. M. 1935, provides: "Every county attorney, sheriff, constable, chief of police, marshal, or police officer must inform against and make complaint and diligently prosecute persons whom they know, or concerning whom they may be informed, or whom they may have reasonable cause to believe to be offenders against the provisions of this act. The neglect or refusal of any such officer to make complaint against or diligently prosecute persons he has reasonable cause to believe to be offenders against the provisions of this act shall be deemed sufficient cause for removal from office."

Section 94-2416, R. C. M. 1947, sec. 11171, R. C. M. 1935, provides: "Every county attorney, sheriff, mayor, constable, chief of police, marshal, or police officer who shall refuse or neglect to perform any of the duties imposed upon him by any of the provisions of this act, shall be guilty of a misdemeanor and be punishable by a fine of not less than one hundred nor more than three thousand dollars, or imprisonment for not less than six months nor more than one year in the county jail. A conviction under this section shall, unless set aside, also work a forfeiture of the office of such officer and operate as a

removal from office. But a prosecution under this section shall not bar or interfere with any proceeding or action for removal from office which may be brought under any other provision of law or statute, nor affect or limit the effect or operation of any other statute regarding removals or suspensions from office."

· Section 94-2417, R. C. M. 1947, sec. 11172, R. C. M. 1935, provides: "Every state, county, city, or township officer, or other person, who shall ask for, receive, or collect any money or valuable consideration, either for his own or for the public use, or the use of any other person or persons, for and with the understanding that he will protect or exempt any person from arrest or conviction for any violation of the provisions of this act, or that he will abstain from arresting or prosecuting, or causing to be arrested or prosecuted, any person offending against any of the provisions of this act, or that he will permit any of the things prohibited by this act to be done or carried on, and every such state, county, city, or township officer who shall grant, issue, or deliver, or cause to be issued or delivered to any person or persons, any license, permit, or other privilege giving or pretending to give any authority or right to any person or persons to carry on, conduct, open, or cause to be conducted or opened or carried on, any game or games which are forbidden by any of the provisions of this act, is guilty of a felony."

So says the law.

Such is the solemn expression of the will of the supreme power of the state. R. C. M. 1947, sec. 12-101, sec. 5670, R. C. M. 1935.

It is the duty of a judge to perform his official functions regardless of his personal feelings or sentiments. Hill v. Nelson Coal Co., 40 Mont. 1, 6, 104 Pac. 876.

In 48 C. J. S., Judges, sec. 46, pp. 1008, 1009, it is said:

"The jurisdiction and powers of a judge extend and are limited to those fixed by law. Beyond that he cannot act * * *

"It is the duty of a judge to exercise the judicial functions duly conferred on him by law, to expedite the business of his court, and to act regardless of his feelings or sentiments, and he cannot relieve himself of that duty, nor can he divest himself of jurisdiction, by an arbitrary dismissal of the proceedings. * * *"

The laws under which this prosecution was brought and under which it must be prosecuted were each and all written and enacted by the legislative branch of our government. None is the handiwork of the judges or of the courts. Whether the judge on the bench individually believes such laws to be wise or foolish is of no concern. They are nonetheless the law and they must be obeyed and applied.

It is the duty of this court, in the exercise of the superintending power conferred upon it by our state Constitution, not only to secure to every litigant, and this includes the state of Montana and its prosecuting officers, a fair and impartial trial, but also to see to it that it is done, insofar as possible, in such a manner as will beget no suspicion of the fairness of the judge.

We conceive it to be the duty of this court to hold the scales level, and to see to it, insofar as is warranted by the facts and the law, that impartial justice is meted out.

The emergency declared by the legislature demands law enforcement. Law enforcement demands the performance of many unpleasant duties by law enforcement officers and by the courts and the judges thereof. In this emergency the trial courts and judges must be held to a strict performance of official duty under the applicable laws of our state.

It is ordered:

1. That the order for the return to defendants of the seized contraband gambling paraphernalia be stricken, set aside and vacated as wholly void;

2. That the order sustaining defendants' demurrer be stricken, set aside and vacated as erroneous;

3. That the court make and enter an order denying and overruling defendants' demurrer to the amended information;

4. That the judgment and order appealed from be and they are reversed.

5. That the cause be remanded to the district court for ▪▪▪▪▪▪▪▪ further proceedings not in conflict with this opinion and to be had and done according to law, keeping in mind that as yet defendants have not been in jeopardy for the offense here charged and that from the six months mentioned in subdivision 2 of section 94-9501, R. C. M. 1947, must be excluded the time that has elapsed from June 28, 1949 to the date of the remittitur herein.

It is so ordered,—remittitur to issue forthwith.

MR. JUSTICE FREEBOURN (dissenting):

The state of Montana, under authority of Chapter 142, Session Laws of Montana 1945, gave the defendant organization, for money paid, a license and right to possess such slot machines.

To find that such possession is wrongful and a nuisance is in direct conflict with section 57-104, R. C. M. 1947, sec. 8645, Rev. Codes 1935, which states: "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance."

This is also the law generally. See 46 C. J., Nuisances, sec. 40, p. 672, and 39 Am. Jur., Nuisances, sec. 204, p. 480.