STATE, RESPONDENT, *v.* MARCK, APPELLANT.

No. 8953

Submitted May 8, 1950. Decided July 8, 1950.

220 Pac. (2d) 1017

Messrs. Doyle and Francisco, Conrad, Messrs. Hall, Alexander and Burton, Great Falls, for appellant. Mr. Francisco and Mr. Hall argued orally.

Mr. Herbert W. Conrad, Jr., County Atty., Conrad, Mr. Arnold H. Olsen, Atty. Gen., Mr. Willis B. Jones, Mr. Harold L. Holt, Mr. Philip O'Donnell, Asst. Attys. Gen., for respondent. Mr. Olsen, Mr. O'Donnell and Mr. Conrad argued orally.

PER CURIAM.

This is an appeal by the defendant Alex Marck from a judgment of conviction entered against him in the district court of Pondera county, the Hon. R. M. Hattersley, district judge presiding, following his trial upon an information charging him and two others persons with the crime of unlawfully setting up lotteries, conducted by means of eight coin-operated slot machines.

The information charges: "That the said above named defendants did at the City of Conrad, County of Pondera, State of Montana, on or about the 20th day of June, A. D., 1949, at those certain premises in said city designated and known as Farmers & Businessmens Club, and also known as Ed's Tavern, located at the corner of Front Street and Fourth Avenue in said city, county and state aforesaid, wilfully, unlawfully and wrongfully set up lotteries, to-wit: eight (8) slot-machines, that is, machines which may be played for the consideration of

180

placing therein United States coins and from which said playing of said machines the player may obtain a reward in money of the United States, the paying of which said reward is determined by chance, contrary to form, force, and effect of the statute in such cases made and provided, and against the peace and dignity of the State of Montana.''

On Marck's plea of not guilty and his waiver of a jury, trial was had before said district court.

The facts are not in dispute, it being conceded that at the times charged the three defendants, each acting either as an officer, an agent or employee of the Farmers & Businessmens Club, an incorporated ''nonprofit club,'' did set up for operation in the premises known as Ed's Tavern in Pondera county, the eight described slot machines, each of which was played with United States coins and from which machines the player may obtain a reward in money, the paying whereof is determined by chance. Following the trial the court adjudged the defendant Marck guilty, assessed a fine and ordered that in lieu of payment of such fine he be imprisoned in the county jail.

From this judgment Marck has appealed to this court. His only specification of error is the making and entering of the judgment. Marck here contends that the coin-operated slot machines so set up, used and operated do not constitute lotteries.

Assuming to act under the provisions of Chapter 142, of the Session Laws of 1945, as amended by Chapter 285, of the Session Laws of 1947, the state board of equalization prior to the times charged in the information had issued licenses to the Farmers & Businessmens Club for each of the eight slot machines so possessed and operated by defendants.

Coin-operated slot machines, commonly known as ''one-armed bandits,'' have long been banned by the criminal laws of this state.

Every person who contrives, prepares or set up any lottery

within the state of Montana is guilty of a criminal offense punishable by imprisonment in the county jail not exceeding one year or by fine not exceeding two thousand dollars or both. R. C. M. 1947, secs. 94-3003 and 94-3011.

The scheme here involved by the use of the slot machines was for the disposal and distribution of money by chance. Each player drops a United States coin in the slot of a mechanical device, then pulls a lever setting in motion the wheels and other mechanism of the machine, and waits until the wheels cease revolving for the chance of obtaining thereby and therefrom more coins than he contributed. Such scheme is clearly a lottery. R. C. M. 1947, sec. 94-3001.

The Hon. Guy C. Derry, a judge of the district court of Yellowstone county, was called and presided in the district court of Cascade county, in the case of State of Montana v. Berkner McPherson, defendant, wherein Truman G. Bradford, county attorney of Cascade county, by information filed October 2, 1947, accused McPherson of the crime of unlawfully setting up lotteries by means of eight coin-operated slot machines. The defendant was convicted of the crime charged following which he gave notice of appeal to this court. Thereafter he let the matter drop, failing to prepare, serve or file any brief or specifications of error or otherwise complete his appeal, which finally was dismissed on motion of the attorney general. See State v. McPherson, 122 Mont. 627, 209 Pac. (2d) 1023. On November 19, 1947, on overruling McPherson's demurrer to the information and again on January 10, 1948, on entering the judgment of conviction, Judge Derry made and filed widely published written memorandum opinions citing the authorities and correctly holding that the operation of a slot machine is a lottery and banned by the criminal laws of this state.

The purchase from or issuance by the state board of equali- zation of a revenue or license stamp for each slot machine is no justification for the criminal offense of setting up, maintaining, operating or possessing these one-armed bandits.

State ex rel. Replogle v. Joyland Club, 124 Mont. 122, 220 Pac. (2d) 988; State v. Israel, 124 Mont. 152, 220 Pac. (2d) 1003; State v. Engle, 124 Mont. 175, 220 Pac. (2d) 1015; State ex rel. Brown v. Buffalo Rapids Club, 124 Mont. 172, 220 Pac. (2d) 1014.

The judgment is affirmed and remittitur ordered to issue forthwith.

MR. JUSTICE FREEBOURN (dissenting) :

The state of Montana, under authority of Chapter 142, Session Laws of Montana, 1945, gave the defendant organization, for money paid, a license and right to possess slot machines.

To find that such possession is unlawful and a nuisance is in direct conflict with section 57-104, R. C. M. 1947 (sec. 8645, R. C. M. 1935), which provides: ''Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance.''

Such possession is neither a nuisance or a crime. See 46 C. J., Nuisances, sec. 40, p. 672, and 39 Am. Jur., Nuisances, sec. 204, p. 480.

Although slot machines are gambling devices, they do not constitute lotteries as defined by the state statutes.

Section 94-3001, R. C. M. 1947, provides: ''Lottery defined. A lottery is any scheme for the disposal or distribution of property by chance, *among persons* who have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it, or for any share or interest in such property, upon any agreement, understanding, or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, or gift enterprise, or by whatever name the same may be known.''

Webster's New International Dictionary defines a lottery to be: ''A scheme by which one or more prizes are distributed by chance among persons who have paid or promised a consideration for a chance to win them, usually as determined by the numbers or tickets as drawn from a lottery wheel. A game in

which prizes are given from a pool to holders of cards matching others reserved for that purpose.''

It is plain that a slot machine does not come within these definitions.

One person only can play a slot machine on each play of the machine. Many persons play a lottery on each play or drawing.

One person only can win on a play of the slot machine. Many persons may win on a play of the lottery.

That the legislature intended the slot machine to be a gambling device is shown by the placing of the slot machine in the same section of the Codes, section 94-2401, R. C. M. 1947, with faro, poker, craps and other gambling games.

Companion sections of the statute, enacted at the same time and under the same Chapter as the section defining lotteries, provide punishment for selling lottery tickets, printing or writing lottery tickets, and for ''lotteries drawn or to be drawn out of this state * * * in the same manner as to lotteries drawn or to be drawn within this state.'' R. C. M. 1947, sec. 94-3010.

What the legislature meant by lotteries as defined, are those schemes which were used in our early national history to raise money for post roads and government projects, in which tickets were sold to many persons for each drawing and the prize or prizes divided among many persons.

History shows that in 1748 Benjamin Franklin and other good citizens organized a lottery to erect a battery for the defense of the Colonies.

Also in 1764 legislative authority authorized a lottery to rebuild Faneuil Hall, to rebuild the first edifice destroyed by fire in 1761.