STATE EX REL. OLSEN, ATTY. GEN., APPELLANT

*v.*

CROWN CIGAR STORE ET AL., RESPONDENTS

No. 8964

Submitted April 27, 1950. Decided August 2, 1950.

220 Pac. (2d) 1029

Mr. Arnold H. Olsen, Atty. Gen., Mr. Willis B. Jones, Mr. Philip O'Donnell, Asst. Attys. Gen., for appellant. Mr. Olsen and Mr. O'Donnell argued orally.

Mr. W. E. Coyle, Mr. Alf C. Kremer, Mr. Rex F. Henningsen, all of Butte, for respondents. Mr. Coyle and Mr. Henningsen argued orally.

PER CURIAM.

Appeal by the state from decree and order entered January 5, 1950, in the district court of Silver Bow county, the Hon. John B. McClernan, district judge, presiding, and cross-appeal by defendants from portions of such decree in an action to enjoin the operation of certain gambling games, lotteries and devices and to abate as a nuisance the building and premises in and on which the gambling and lotteries were permitted, same being described as: "* * * the building, structure, and premises * * * shown and designated as the Crown Cigar Store, the Crown Bar, Copper Kings Club, and as 106 and 110 East Park Street * * * The first floor of that certain three-story brick building situated upon that parcel of land situated in Silver Bow County, Montana and described as the West 38 feet of Lot 5 and the East 10½ feet of Lot 6 all in Block 39, Butte Townsite, in the city of Butte, Silver Bow County, State of Montana * * * including the entire first floor of said building and structure and all rooms and compartments thereof, any or all of which may be entered through either of the outside entrances thereof, to-wit: That certain door therein located and opening on said East Park Street, and designated as 110 East Park Street, Butte, Montana, and that certain door therein, located and opening, on said East Park Street and designated as 106 East Park Street, Butte, Montana * * *."

There is no dispute or conflict as to the facts, same having been agreed to by the parties pursuant to stipulation entered in open court.

The defendant George D. Curtis is the owner of the west 13½ feet of lot 5, and the east 10½ feet of lot 6, all in block 39 of

the Butte townsite in the city of Butte, and the defendant Old National Bank of Spokane is the owner of the 23½ feet immediately to the east thereof.

The two properties combined are the property upon which the Crown Cigar Store and the Copper Kings Club room are located, being the west 38 feet of lot 5 and the east 10½ feet of lot 6, all in block 39, Butte townsite, in the city of Butte.

On the ground floor of the above premises the defendants Joseph M. Lyden and John C. Cox own and conduct a bar, cigar store and lunch counter under the style of The Crown Cigar Store. "

In May 1947 Lyden and Cox organized and incorporated the defendant Copper Kings Club, a so-called "non-profit organization" or social club which has since been managed, operated and conducted by them, Lyden being the president and Cox the treasurer of the club.

The sole and exclusive business of the Copper Kings Club was the conducting, maintaining and operation of slot machines. For such enterprise the club used and occupied a room or compartment in the northwest corner on the first floor of the described building. There was a door, usually kept open, leading from such room or compartment to that portion of the first floor used and occupied by The Crown Cigar Store, bar and lunch counter. The slot machines operated and possessed by the club bore revenue stamps purchased from and issued by the state board of equalization.

In the portion of the building occupied by The Crown Cigar Store a numbers game was run and conducted for profit. The game had grossed the defendants the sum of $253,135. There is no pretense that such game is a "hickey game" nor that the winners are paid off in "hickeys" under the provisions of the "Hickey Law," Ch. 153, Laws of 1937, or those of Chapter 142, Laws of 1945.

The game is called a Chinese lottery by the attorney general, while defendants call it "The Crown Game" and "The Crown

punchboard game.'' The players of the game mark on tickets containing 80 squares numbered 1 to 80. At the close of the game the operators select 20 of those numbers. The player wins if his ticket has marked upon it five or more of the numbers marked by the operators. The players purchase tickets at prices ranging from 15¢ to $1 per ticket. On a 25¢ ticket the following combinations receive the following awards:

| | |
|---|---|
| 5 numbers pay | $.50 |
| 6 numbers pay | 4.50 |
| 7 numbers pay | 45.00 |
| 8 numbers pay | 225.00 |
| 9 numbers pay | 450.00 |
| 10 numbers pay | 900.00 |

The other gambling equipment consisted of lottery tickets, a wooden punchboard, an electric board, and other movable property used in operating the game.

The operators of the game affixed to the stub of each ticket pad purchased or used by the players participating, tax stamps in the amount of 3% of the total price of the tickets sold from the pad.

October 18, 1949, the state of Montana, through its attorney general, filed in the above district court in cause No. 43986 therein, a complaint accompanied by the supporting affidavits of two investigators employed by the attorney general, charging defendants with knowingly and intentionally operating, conducting and permitting in the building and structure and on the premises aforesaid, lotteries and gambling in violation of the laws of the state banning same, seeking to abate the nuisance said to there exist,—to enjoin and restrain the continuance thereof and praying for an order closing the premises and directing disposition of the property used in operating such nuisance.

October 19, 1949, upon reading the complaint and affidavits thereto attached, Judge McClernan issued a restraining order and caused same to be served upon the defendants other than

Old National Bank of Spokane, requiring defendants to show cause on October 25, 1949, why a writ of injunction should not issue to abate and prevent the continuance or recurrence of the alleged nuisance.

Upon the stipulated facts the district court found "The Crown Game" as operated by defendants was gambling and a lottery and on January 9, 1950, rendered judgment declaring the premises a common nuisance; decreed that it be abated for a year; ordered the gambling equipment brought before the court for disposition according to law; ordered defendants to deliver to the sheriff the equipment used in the operation of "The Crown Game" and ordered the sheriff to take such equipment into his possession, but ordered that the action against the defendant Copper Kings Club be dismissed, holding the operation of its five slot machines to be lawful and declining to enjoin the defendant club from continuing such operation.

Immediately following its entry, the judgment was delivered to the sheriff for execution and within thirty minutes thereafter the sheriff made his return to the effect that no gambling equipment was found on the premises, notwithstanding that at the trial defendants had agreed and stipulated that the described gambling equipment was in their possession and on the premises from October 18, 1949, to January 3, 1950.

On January 9, 1950, following the filing of the sheriff's return the defendants, Old National Bank of Spokane, a corporation, and George D. Curtis filed in the district court their petition "for delivery of the property to owners and for cancellation of order of abatement," basing same upon the affidavit of the defendant George D. Curtis and the sheriff's return. The district court, over the objections of the state, granted the petition.

The state's appeal is from the portions of the judgment: (1) Dismissing the action as to the Copper Kings Club; (2) dissolving the temporary injunction; (3) refusing to abate and prevent the nuisance; and (4) from an order made after judg-

ment permitting the defendants, George D. Curtis and Old National Bank of Spokane, to reopen the premises and vacating the abatement as to them.

The defendants' cross-appeal is from the judgment of January 9, 1950, except the portion thereof in favor of the defendant Copper Kings Club.

The operation of the five slot machines and the setting up, running and conducting of the "Crown Game" is conceded by stipulation of the parties. Such stipulation, *inter alia*, recites: "That the Crown game is operated by the defendants Joseph M. Lyden and John C. Cox, their employes, servants and agents and is not operated or conducted by Copper Kings Club, a corporation * * *

"That the Crown game as described in this stipulation is played and operated continuously daily and that four separate games approximately are played every hour in every day during the business hours of the Crown Cigar Store. * * *

"That the defendants unless restrained by the Court, intend to continue to operate said Crown game at said Crown Cigar Store premises in the manner heretofore described * * *

"In particular it is expressly stipulated and agreed that said Crown game was played and operated at the Crown Cigar Store in the manner previously stated on May 26, June 11, September 21, September 22, and September 30th, all in 1949 within the Crown Cigar Store.

"* * * that the five slot machines * * * are owned, operated and possessed by Copper Kings Club, a corporation, within the room approximately 30 feet by 30 feet located at the northwest corner of the ground floor of the building in question here * * * and that ever since the year 1947 said slot machines have been played and operated for money within said club room, and that the defendant Copper Kings Club will operate and will continue to operate said slot machines in the future unless restrained and enjoined by the court.

"* * * that Joseph M. Lyden and John C. Cox, two of the

316

defendants, have been the owners of, in occupation and possession of the Crown Cigar Store business conducted within the premises above described and have conducted and operated the Cigar Store, and said bar and said restaurant within the Crown Cigar Store at all times since the year 1947 and at the present time own, operate and conduct said business * * *

"That at all times since the year 1947 and now, Joseph M. Lyden is and has been the president of Copper Kings Club, a corporation, and John C. Cox is the treasurer of said Copper Kings Club, a corporation, and that said Copper Kings Club is managed, operated and conducted for said corporation by said Joseph M. Lyden and John C. Cox as such officers of said corporation; that said Copper Kings Club, a corporation intends to maintain and to continue to maintain and operate said slot machines, operated by coin of the United States in the manner previously described, unless it is enjoined and restrained from so doing by the court in this action * * *."

The *operation* of *all* coin-operated slot machines is prohibited to *all* persons in this state. To this ban there is no exception. R. C. M. 1947, sec. 94-2401; State v. Israel, 124 Mont. 152, 220 Pac. (2d) 1003; State v. Engle, 124 Mont. 175, 220 Pac. (2d) 1015.

The *possession* of *all* coin-operated slot machines is forbidden to any and *all* persons except *only* "a public officer, or * * * a person coming into possession thereof in or by reason of the performance of an official duty and holding the same to be disposed of according to law." R. C. M. 1947, sec. 94-2404; State v. Israel, supra.

Slot machines are banned by the laws of this state as gambling devices. R. C. M. 1947, secs. 94-2401 and 94-2404. They are also barred as *lotteries*. R. C. M. 1947, secs. 94-3001, 94-3003 and 94-3011; State v. Marck, 124 Mont. 178, 220 Pac. (2d) 1017; State v. Read, 124 Mont. 184, 220 Pac. (2d) 1020.

The ban against slot machines imposed by the penal statutes of this state is in nowise or manner lifted by any of the

provisions of: (1) "The Hickey Law," Ch. 153 of the Session Laws of 1937; (2) Chapter 142 of the Session Laws of 1945; or (3) Chapter 298 of the Session Laws of 1947. State v. Israel, supra.

That the slot machines bore revenue stamps purchased from and issued by the state board of equalization does not justify the operation or possession of the banned devices. State v. Israel, supra.

The numbers game, whether called Chinese lottery, "The Crown Game,," "The Crown punchboard game" or by any other name, is clearly a lottery and banned by the laws of this state. R. C. M. 1947, secs. 94-3001, 94-3003, 94-3004, 94-3005, 94-3006, 94-3009, and 94-3011; State v. Hahn, 105 Mont. 270, 72 Pac. (2d) 459; State ex rel. Leahy v. O'Rourke, 115 Mont. 502, 146 Pac. (2d) 168.

Any article, machine or apparatus maintained or kept in violation of any of the provisions of sections 94-2401 or 94-2404, supra, is a public nuisance. R. C. M. 1947, sec. 94-2409.

The building or place wherein the banned games and devices are conducted, operated, maintained or kept is subject to abatement and to an order for the effectual closing against use for any purpose for a period of one year. R. C. M. 1947, sec. 94-1007.

In State ex rel. Nagle v. Naughton, 1936, 103 Mont. 306, 319, 320, 63 Pac. (2d) 123, 128, involving the same premises and some of the same persons named defendants herein, this court reversed a judgment of the district court of Silver Bow county and directed the entry of judgment for the state: Establishing a nuisance for gambling; directing the abatement thereof; ordering the removal of all fixtures, gambling paraphernalia and other movable property used in conducting the banned games "from the premises occupied by the Crown Cigar Store," ordering "that the premises known as the Crown Cigar Store shall be closed for one year * * * and that the defendants, their agents, servants and employees *be perpetually restrained and*

*enjoined from using the premises in question for the operation of such nuisance."* Emphasis supplied.

The "premises in question" referred to and ordered abated by this court in the Naughton case, supra, are the same premises here involved. For their description see 103 Mont. at pages 308, 309, 63 Pac. (2d) 123, 124.

R. C. M. 1947, sec. 94-1009 provides: "If the owner of the building or place has not been guilty of any contempt of court in the proceedings, and appears and pays all costs, fees, and allowances which are a lien on the building or place and files a bond in the full value of the property, to be ascertained by the court, with sureties, to be approved by the court or judge, conditioned that he will immediately abate any such nuisance that may exist at such building or place and prevent the same from being established or kept thereat, within a period of one year thereafter, the court, or judge thereof, may, if satisfied of his good faith, order the premises closed, under the order of abatement, to be delivered to said owner, and said order of abatement canceled so far as the same may relate to said property. The release of the property under the provisions of this section shall not release it from any judgment, lien, penalty, or liability to which it may be subject by law."

While the judgment of the district court directed the sheriff to seize the gambling equipment and directed defendants to turn same over to him, the sheriff's return shows that when he went to the premises immediately following the rendering of the judgment he could find none of such equipment thereon. The record further shows that at no time since have defendants either delivered or offered to deliver their gambling paraphernalia to the sheriff or to the trial court.

Under the law and the facts of this case this court finds that it was error for the trial court to dismiss the action against the Copper Kings Club and to dissolve the temporary injunction against defendants.

We find no merit in the cross-appeal and the same is denied.

The stipulated facts herein establish the nuisance of which complaint is made and under such facts and the law applicable thereto plaintiff is entitled to an injunction perpetually enjoining the defendants and to abate and prevent the continuance or recurrence of such nuisance and enjoining them and their officers, agents, servants, employees and attorneys, from operating, conducting, maintaining, keeping, setting up, or permitting the setting up, running, operating or keeping of any and all slot machines, numbers games, games of chance, gambling or lotteries, whether called Chinese lottery, ''The Crown Game,'' ''The Crown punchboard game,'' or by any other name at, in, upon or from the described premises occupied by the Crown Cigar Store or the Copper Kings Club.

The sheriff is ordered to take possession of the described premises and real property occupied by the Copper Kings Club and such premises shall be closed and kept effectively closed for a period of one year from date of service of the abatement order unless sooner released by order of the district court on proper showing made pursuant to section 94-1009, R. C. M. 1947, and jurisdiction in the district court shall be recognized for such purpose.

Defendants, their officers, agents, servants and employees are enjoined and restrained from interfering with the sheriff of Silver Bow county in taking possession of said premises or in seizing thereat or therein or in removing therefrom or in holding or possessing the fixtures, instruments, gambling paraphernalia and other movable property used in setting up, running, conducting, maintaining, operating, aiding or abetting in the carrying on or operating of slot machines, numbers games, games of chance, gambling or lotteries by any name called or designated.

Defendants and their premises shall be dealt with and the property disposed of according to law. State ex rel. Replogle v. Joyland Club, 124 Mont. 122, 220 Pac. (2d) 988; State v. Israel, supra; and State ex rel. Brown v. Buffalo Rapids Club, 124 Mont. 172, 220 Pac. (2d) 1014.

The district court shall cause decree and orders to be made conforming with this opinion and shall cause same to be entered, served and executed. Remittitur shall issue forthwith. It is so ordered.

MR. JUSTICE ANGSTMAN (concurring in part and dissenting in part):

I concur in what is said in the foregoing opinion, except so far as it leaves the implication that the court erred in permitting the premises used by the Crown Cigar Store to be opened for legitimate business.

I think under section 94-1009 the district court has discretion to permit the premises to be opened for legitimate and legal use.

Of course, before the owner may have the premises restored for use, he must show that he has not been ''guilty of any contempt of court in the proceedings.''

In my opinion ''contempt of court in the proceedings'' referred to in section 94-1009 means contempt in the proceedings before the court and not to contempt of court in certain proceedings transpiring many years before.

And the ''good faith'' referred to in section 94-1009 means and refers to the good faith in abating the nuisance and in preventing its recurrence in the future and not to the question as to whether the premises had theretofore been used for gambling or other illegal purpose.

The failure of the officers to find the gambling equipment on the premises does not establish contempt of court, particularly where as here there has been no hearing or trial on a charge of contempt, nor does it show lack of good faith as to future operations.

I think under the statute the district court has a wide discretion in either allowing or disallowing an application to permit the premises to be used for a lawful purpose and that we should not interfere with that discretion except in case of a clear abuse thereof, and that no such abuse is shown here.

If the majority opinion does not carry the implication that

the court erred in permitting the premises to be opened for legitimate use, then the opinion leaves undecided one of the main questions presented by the appeal. If, on the other hand, the opinion carries the implication that the closing of the Copper Kings Club premises requires a closing of the Crown Cigar premises, then I think it treats of the question prematurely. I think that whether the premises are so separated into different compartments that the closing of the one should operate as a closing of the other should first be presented to the trial court.

MR. JUSTICE FREEBOURN:

I concur with Justice Angstman in his treatment of the meaning and effect of section 94-1009 and with the rest of his opinion on authority of State ex rel. Replogle v. Joyland Club, supra, and other cases recently decided by this court.

I think the lower court was right in permitting the Crown Cigar Store premises to be opened for lawful business.