STATE OF MONTANA, Plaintiff and Appellant, v. JOHN C. COX, THE CROWN CIGAR STORE, the First Floor of That Certain Building Known as 110 East Park Street, Butte, Montana, Defendants and Respondents.

No. 9949.

Submitted January 29, 1960. Decided February 4, 1960.

349 Pac. (2d) 104.

See **C. J. S.** Lotteries, § 10.

508

Forrest H. Anderson, Atty. Gen., Louis Forsell, Asst. Atty. Gen., for appellant, Louis Forsell, Asst. Atty. Gen. argued orally.

David L. Holland, E. J. Foley, Butte, for respondent, E. J. Foley argued orally.

MR. CHIEF JUSTICE HARRISON delivered the Opinion of the Court.

On April 24, 1958, the attorney general filed a complaint in the District Court of the Second Judicial District, Silver Bow County, seeking to enjoin defendant from operating an alleged lottery in his establishment, the Crown Cigar Store, in Butte.

A temporary restraining order and order to show cause issued. On May 7, 1958, the return day, defendant filed a motion to quash the temporary writ on the ground that the complaint and affidavits did not state facts sufficient to entitle plaintiff to relief. The District Court sustained this motion, treating it as a general demurrer, and the plaintiff having elected to plead no further and to stand on his complaint, judgment was entered for defendant and plaintiff's complaint dismissed. From this judgment plaintiff appeals.

The defendant, John Cox, is the proprietor and operator of the Crown Cigar Store, located at 110 East Park Street in Butte, Montana, where he is engaged in the business of selling beer, liquor, tobacco, novelties, magazines and meals to the public.

The Crown Cigar Store needs no introduction, for on at least two occasions in the past, activities in the nature of gambling have been enjoined on the same premises. In State ex rel. Nagle v. Naughton, 103 Mont. 306, 63 Pac. (2d) 123, gambling at cards was enjoined at the Crown, and in State

ex rel. Olsen v. Crown Cigar Store, 124 Mont. 310, 220 Pac. (2d) 1029, slot machines and what was termed as a ''Chinese lottery'' were condemned.

It is this same ''Chinese lottery,'' with minor revisions, that is involved here.

Taking the allegations of the complaint as true, it appears that a customer at the Crown receives a cash register stub, known as a ''premium ticket,'' upon the purchase of a certain amount of merchandise, either drinks, food or sundries from the cigar or magazine counter. A patron who desires to participate in the ''Chinese lottery'' obtains another ticket, provided in the store, with numbers from one to eighty printed thereon and marks his choice of ten numbers with a brush and ink also provided. This numbered ticket is deposited with an operator along with a ''premium ticket.'' The operator will not accept a numbered ticket unless it is accompanied by a ''premium ticket.'' In short, one must purchase merchandise before he is allowed to participate. The operator then returns a similarly marked card with a validating mark thereon to the player. Three times daily a ''drawing'' is held, whereby ten numbers ranging from one to eighty are selected by lot. Players who have marked from six to ten of the chosen numbers receive cash prizes in varying amounts.

The District Court dismissed the complaint on the ground that the game did not constitute a lottery within the definition of section 94-3001, Revised Codes of Montana, 1947, since no consideration was paid for the chance to participate. In support of its holding, the court cited State ex rel. Stafford v. Fox-Great Falls Theatre Corp., 114 Mont. 52, 132 Pac. (2d) 689.

Section 94-3001, R. C. M. 1947, defines a lottery as follows:

''A lottery is any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it, or for any share or interest

in such property, upon any agreement, understanding, or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, or gift enterprise, or by whatever name the same may be known."

The three elements of a lottery are: The offering of a prize; the awarding of the prize by chance; and the giving of consideration for an opportuntiy to win the prize. State v. Hahn, 105 Mont. 270, 273, 72 Pac. (2d) 459.

There is no question that the elements of prize and chance are present in the scheme involved here. As is true in most cases involving an alleged lottery, the sole question is whether the element of consideration is present. More specifically, the question is: Where an opportunity to win an award, which is distributed by chance, is presented to an individual who purchases merchandise, the purchase price of which is equivalent to its value, has that individual paid a consideration for the chance to participate in the scheme, so as to constitute it a lottery?

Defendant insists that the scheme, involved here, contemplates no consideration, and the District Court interpreted State ex rel. Stafford v. Fox-Great Falls Theatre Corp., supra, as holding that such a scheme was not a lottery.

In State ex rel. Dussault v. Fox-Missoula Theatre Corp., 110 Mont. 441, 101 Pac. (2d) 1065, this court held that where a theatre uses part of the price of admission to purchase a prize which is awarded by chance at a "Bank Night," there is a *pro tanto* reduction in the price of admission, and the amount expended for the prize constitutes consideration. In State ex rel. Stafford v. Fox-Great Falls Theatre Corp., supra, this court expressly overruled the Dussault case, and stated that the test is not whether the prizes have been purchased out of funds paid by the participants, but whether the participants have paid a valuable consideration for the chance to participate.

Defendant apparently relies on language found in the Stafford case as authority for the proposition that where value is

received along with an opportunity to participate in a drawing for an award, there is no consideration paid for the chance to participate and the scheme is not a lottery. But it is important to note that in neither the Dussault nor Stafford case was it required that a patron purchase a ticket to the theatre before he would be allowed to participate. It must be remembered that before one may participate in the ''Chinese lottery'' involved here, he must buy merchandise. For this reason, the Stafford case is distinguishable on the facts from the case under consideration. Anything said with reference to a ''closed participation'' scheme in that case is *obiter dicta* and not controlling here.

The correct view, which is supported by substantial and respectable authority, is that where one is required to make an outlay of money in order to participate in a scheme whereby an award is made by chance, the participant pays valuable consideration for the chance to participate, notwithstanding the fact he may also receive merchandise at the same time in return. People v. Gonzales, 62 Cal. App. (2d) 274, 144 Pac. (2d) 605; Holmes v. Saunders, 114 Cal. App. (2d) 389, 250 Pac. (2d) 269; People v. Miller, 271 N. Y. 44, 2 N. E. (2d) 38. Also see Williams, Flexible Participation Lotteries, section 204, page 126 (1938), and cases cited therein.

There are many jurisdictions which go further and hold that the mere free registration for a drawing constitutes consideration, even though the participant need buy nothing to take part. State v. Greater Huntington Theatre Corp., 133 W. Va. 252, 55 S. E. (2d) 681; State ex rel. Line v. Grant, 162 Neb. 210, 75 N. W. (2d) 611.

To our mind, the framers of the Montana Constitution who expressly forbade the Legislature to authorize lotteries or gift enterprises and commanded it to pass laws to prohibit the sale of lottery or gift enterprise tickets in Article XIX, section 2 of the Montana Constitution, were seeking to suppress and restrain the spirit of gambling which is cultivated

and stimulated by schemes whereby one is induced to hazard his earnings with the hope of large winnings. The statutes which define and prohibit lotteries must therefore be interpreted with this purpose in mind. The element of consideration is a necessary element of a lottery, or any other type of gambling which the Constitution and statutes were designed to prevent, because it represents the earnings which are hazarded in the hope of getting something of greater value. To determine whether a consideration is contemplated by a particular scheme, it is therefore necessary to inquire if a participant is induced to hazard anything of value to win. Those who promote schemes such as that involved here argue that there can be no hazard where the participant receives value in merchandise for his money. It may be true in a particular case that a participant does receive full value for his layout and that he was not induced to purchase by the desire to get something extra as a windfall. It may be true in a particular case that an individual would have purchased merchandise even though no chance for a prize were offered therewith. But does the apparent innocuousness of a scheme in a particular case necessarily render it legitimate and deserving of judicial approval where its moving and operative element is an appeal to the inherent desire in every man to get something for nothing? Is not the same evil, which the Constitution and statutes were designed to prevent, equally as present in a scheme whereby an individual can be induced to purchase something he does not need or more than he needs in the prospect of a valuable award as where he is induced to hazard his cash for a chance in the form of a ticket alone? To ask the question is to answer it.

It is true that the dictum in the Stafford case might have led the respondent to believe that his ''Chinese lottery'' was lawful.

In all fairness this reasonable reliance should not cause the

defendant to suffer the abatement of his lawful business, but only the abatement of the objectionable lottery.

For the reasons stated, the judgment is reversed.

MR. JUSTICE ADAIR, MR. JUSTICE ANGSTMAN, and HONORABLE LEROY L. McKINNON, District Judge, sitting in place of MR. JUSTICE BOTTOMLY concur.

MR. JUSTICE CASTLES:

I dissent.

This decision, while directed at the Crown Cigar Store, makes all gift enterprises illegal, whether or not a consideration is paid. Removing from the fact situation described the descriptive words "Chinese lottery" and "scheme," the situation is identical to many everyday advertising gimmicks such as the grocery store drawings, gas station drawings, door prizes for attendance and even "trade stamps." The merchandise bought was of full value. There was no element of possible "loss" contained in the so-called consideration. I believe the consideration contemplated by the Constitution (Article XIX, section 2) and statutes to be such a consideration that involves the chance to *win or lose,* viz., "a gamble" or having to do with a "sale of tickets," as used in the Constitution.